**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**CSX TRANSPORTATION, INC.**

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 1994.

Decided Jan. 6, 1995.

Reargument Denied Feb. 23, 1995.

---

Emily Longo Smarto, Asst. Dist. Atty., for appellant.

James M. Becker, for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

The Commonwealth of Pennsylvania (Commonwealth) appeals an order of the Court of Common Pleas of Westmoreland County (trial court) dismissing the criminal information charging CSX Transportation, Inc. (CSX) with violating the Fish and Game· Code.[1]

On August 23, 1989, two CSX freight trains were traveling on adjacent railroad tracks in Westmoreland County. Because of heavy rainfall and flooding in the area undermining the roadbed, the tracks collapsed and the trains derailed while passing each other. As a result of the derailment, one of the train cars broke open and corn syrup leaked out and flowed into the nearby Youghiogheny River, killing approximately 10,000 fish. On August 22, 1991, at the request of the Fish and Game Commission, the Westmoreland County District Attorney's Office filed a criminal complaint charging CSX with a violation of Section 2504(a)(2) of the Fish and Game Code, Act of October 16, 1980, P.L. 996, 30 Pa.C.S. § 2504(a)(2), which provides: [2]

---

1. The Commonwealth originally filed an appeal in Superior Court which transferred the matter to this court pursuant to 42 Pa.C.S. § 5103 and Pa.R.A.P. 751. We have jurisdiction of this appeal pursuant to Section 762(a)(2) of the Judicial Code, 42 Pa.C.S. § 762(a)(2), which provides:

    [T]he Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the court of common pleas in the following cases:

    *　*　*　*　*　*

    (2) Governmental and Commonwealth regulatory criminal cases.—All criminal actions or proceedings for the violation of any:

    *　*　*　*　*　*

    (ii) Regulatory statute administered by any Commonwealth agency....

    *　*　*　*　*　*

2. Violations of Section 2504 are third degree misdemeanors, Section 2504(d), 30 Pa.C.S. § 2504(d), punishable as follows:

    Section 923(a)(5) of the Fish and Game Code, 30 Pa.C.S. § 923(a)(5):

    For a misdemeanor of the third degree, a fine of not less than $250 nor more than $5,000, or imprisonment not exceeding 90 days or both.

    *　*　*　*　*　*

    Section 923(b), 30 Pa.C.S. § 923(b):

    In addition to the penalties in subsection (a), a fine of $10 may be imposed for each fish taken, caught, killed, possessed or sold in violation of this title....

    *　*　*　*　*　*

**Pollution of Waters**

(a) General Rule.—No person, regardless of intent, shall:

\* \* \* \* \* \*

(2) Allow any substance, deleterious, destructive or poisonous to fish, to be turned into or allowed to run, flow, wash or be emptied into any waters within or bordering on this Commonwealth.

\* \* \* \* \* \*

CSX filed a pre-trial motion to dismiss, contending that the statute is unconstitutionally vague and violated due process by imposing criminal liability for passive conduct and excessive and unreasonable penalties. It contended that absolute liability statutes may impose criminal liability only for an affirmative act. Not reaching the constitutional issues, the trial court dismissed the information, finding the Pollution of Waters section of the Fish and Game Code failed to clearly set forth a duty to perform or standard of behavior as required by Section 301 of the Crimes Code, 18 Pa.C.S. § 301. This appeal followed.[3]

Section 301 of the Crimes Code requires a voluntary act on the part of the actor to impose criminal liability. It provides:

(a) **General rule.**—A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable.

(b) **Omission as basis of liability.**—Liability for the commission of an offense may not be based on an omission unaccompanied by action unless:

(1) the omission is expressly made sufficient by the law defining the offense; or

(2) a duty to perform the omitted act is otherwise imposed by law.

\* \* \* \* \* \*

■ Not disagreeing that Section 301 requires a voluntary act, the Commonwealth contends that the trial court erred in holding that it was necessary to have a voluntary act for a violation of the Pollution of Waters section of the Fish and Game Code. It contends that Section 301 is not applicable because where, as here, a statute imposes absolute liability, Section 305 of the Crimes Code, 18 Pa.C.S. § 305, vitiates Section 301's requirement that an actor commit a voluntary act to be culpable. Section 305(a)(2) of the Crimes Code, 18 Pa.C.S. § 305(a)(2) provides:

The *requirements of culpability prescribed by section 301* of this title (relating to requirement of voluntary act) and section 302 of this title (relating to general requirements of culpability) *do not apply to:*

\* \* \* \* \* \*

(2) offenses defined by statutes other than this title, insofar as *a legislative purpose to impose absolute liability* for such offenses or with respect to any material element thereof plainly appears. (Emphasis added.)

\* \* \* \* \* \*

If, then, the Pollution of Waters section of the Fish and Game Code imposes absolute liability, there is no need for the Commonwealth to establish a "voluntary act" to establish liability. The key phrase in the Pollution of Waters section of the Fish and Game Code is "regardless of intent". The phrase "regardless of intent" indicates that the General Assembly intended that the motive of the actor be immaterial; instead, the only question to be resolved is whether the act occurred—i.e., a harmful substance was al-

---

**3.** A decision to grant a motion to quash any information is within the sound discretion of the trial court and will be reversed only where there has been a clear abuse of discretion. *Commonwealth v. Gemelli*, 326 Pa.Superior Ct. 388, 474 A.2d 294 (1984). An abuse of discretion occurs when there is overriding or misapplication of the law, or the exercise of judgement that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality. *P.G. Publishing Company v. Commonwealth*, 389 Pa.Superior Ct. 86, 566 A.2d 857 (1989).

lowed to flow into Commonwealth waters. By taking away the requirement that the act be voluntary, the General Assembly imposed absolute liability for those controlling hazardous materials to not allow these materials to enter the waters of the Commonwealth.

■ If the Pollution of Waters section of the Fish and Game Code imposes absolute liability, CSX then contends that it violates due process under the Fourteenth Amendment of the United States Constitution, and Article 1, Section 9 of the Pennsylvania Constitution.[4] According to CSX, the Pollution of Waters section of the Fish and Game Code violates due process by impermissibly imposing criminal liability for passive conduct—merely "allowing" a substance harmful to fish to flow into the waters. Normally, a criminal conviction does require both an act and criminal or wrongful intent. *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1951). "Public welfare" statutes, however, often dispense with the intent requirement imposing, instead, absolute liability.[5] Absolute liability is imposed in these types of statutes because the proscribed conduct is subject to stringent public regulation and may seriously threaten the community's

health or safety. *See Baumgardner Oil Company v. Commonwealth*, 146 Pa.Commonwealth Ct. 530, 547 n. 10, 606 A.2d 617, 625 n. 10 (1992). Criminal liability for unintended consequences of activities engaged in by an actor, such as the transporting of hazardous materials, can also be imposed. *See Morissette.*

■■ In this case, the Pollution of Waters section of the Fish and Game Code imposes on the party with control over the harmful substance a duty to absolutely prevent it from entering Commonwealth waters. CSX was absolutely required while transporting hazardous materials not to allow those materials to enter the Commonwealth's waters. The fact that the derailment was caused by the rains and flooding did not relieve CSX of its duty to prevent the corn syrup from flowing into the river after the railcar broke open. Derailments are not so uncommon that it is unreasonable to expect a rail transportation company to be prepared to handle their consequences. Moreover, an ordinary person would not be surprised to learn that allowing a hazardous substance to enter the Commonwealth's waters is prohibited.[6] *Morissette.*

---

4. Article 1, Section 9 provides:
   In all criminal prosecutions the accused hath a right to be heard by himself and his counsel ... [and] he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by judgment of his peers or the law of the land....
   The phrases "law of the land" as used in Art. 1, § 9, and "due process of law" as used in the Fourteenth Amendment to the United States Constitution, are legal equivalents. *Commonwealth v. Heck*, 341 Pa.Superior Ct. 183, 197, 491 A.2d 212, 219 (1985), *affirmed*, 517 Pa. 192, 535 A.2d 575 (1987).

5. In *Morissette*, the United States Supreme Court explained that public welfare offenses:
   are not in the nature of positive aggressions or invasions, ..., but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. *Id.* [342 U.S.] at 255 [72 S.Ct. at 245–46].
   ✳ ✳ ✳ ✳ ✳ ✳
   [This is because] [t]he accused, if he does not will the violation, usually is in a position to

prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. *Id.* at 256 [72 S.Ct. at 246].

6. However, while no action is required when absolute liability is imposed, due process requires that the proscribed conduct and range of penalties be unambiguously identified. *Commonwealth v. Parker White Metal Company*, 512 Pa. 74, 91, 515 A.2d 1358, 1367 (1986). CSX contends that the Pollution of Waters section of the Fish and Game Code violates its due process rights because the term "allow" in the statute is ambiguous. However, the term "allow" is commonly defined as meaning "to forbear or neglect to restrain or prevent". Webster's Ninth New Collegiate Dictionary 72 (9th ed. 1989). Coupled with the phrase "regardless of intent", "allow" in this section means a person or entity responsi-

Finally, CSX contends that the penalties imposed by the Pollution of Waters section of the Fish and Game Code are so excessive as to violate due process. A violator of the Pollution of Waters section of the Fish and Game Code is subject to one or all of the following: a fine of not less than $250 nor more than $5,000, imprisonment of up to 90 days and a fine of $10 per fish killed.[7] CSX specifically challenges the fine per fish killed. State legislatures may fix penalties for unlawful conduct as long as "the fines imposed are not so grossly excessive as to amount to a deprivation of property without due process." *Waters–Pierce Oil Company v. Texas*, 212 U.S. 86, 111, 29 S.Ct. 220, 227, 53 L.Ed. 417 (1909). A fine amounts to a deprivation of property when it is so great as to be confiscatory. *Commonwealth v. Church*, 513 Pa. 534, 541, 522 A.2d 30, 34 (1987).

In *Church*, the defendant pleaded guilty to operating an overweight vehicle and, pursuant to Section 4902(g)(1) of the Motor Vehicle Code, Act of June 17, 1976, P.L. 162, *as amended*, 75 Pa.C.S. § 4902(g)(1), was subject to a fine of $13,517.50. Our Supreme Court held that the graduated penalties provided for in Section 4902(g)(1) were not unconstitutional as being excessive. Because the fines were intended to punish violators

and deter future or continued violators, "the amount of the fine need not be limited to the cost incurred by the Commonwealth for each violation." *Id.* The fact that a particular fine might be greater than the actual damage caused by the violation does not make the fine excessive. *Id.*

Similarly, in *Baumgardner*, we also found that the imposition of fines between $2,500 and $100,000 per day pursuant to Section 606 of the Solid Waste Management Act (SWMA), Act of July 7, 1980, P.L. 380, 35 P.S. § 6018.606, were not excessive.[8] 146 Pa.Commonwealth Ct. at 547, 606 A.2d at 625. In *Baumgardner*, the defendant was charged under Section 401 of the SWMA, 35 P.S. § 6018.401, with various third degree misdemeanors and a second degree misdemeanor for unlawful management of hazardous waste. After reviewing federal case law that upheld strict liability statutes providing for harsher penalties, we held that the penalties contained in the SWMA were constitutional and did not violate due process. *Id.*

Because CSX's violation resulted in multiple fish being killed subjecting it to a large fine does not mean that the individual penalties provided for in this section violate due

---

ble for a hazardous substance that permits it to enter the waters of the Commonwealth is absolutely liable. As such, this section defines "the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited". *Parker White Metal* at 91, 515 A.2d at 1367 (citation omitted).

7. In comparison, while the Water Pollution Prevention and Control Act (Clean Water Act) only imposes criminal penalties upon any person "willfully, negligently or knowingly" violating its provisions, 33 U.S.C. § 1319(c), the Protection of Navigable Waters Act (Refuse Act) is a strict liability statute imposing criminal penalties for any violations. *United States v. White Fuel Corporation*, 498 F.2d 619, 623 (3rd Cir.1974). In *White Fuel*, the defendant was fined $1,000 for discharging oil into Boston Harbor. Oil that leaked from the defendant's underground storage tanks had indirectly seeped into the harbor. The Third Circuit rejected a "due care" defense hold-

ing that such would cripple enforcement of the Refuse Act. *Id.* It held any occasional harshness resulting from imposing strict liability was offset by the moderateness of the permitted fines. However, the Appeals Court noted that acts of God and of parties not under the defendant's control could be legitimate defenses. *Id.* at 624.

8. Section 606(f), 35 P.S. § 6018.606(f), provides:

Any person who stores, transports, treats or disposes of hazardous waste within the Commonwealth in violation of section 401, or in violation of any order of the department shall be guilty of a felony of the second degree and, upon conviction, shall be *sentenced to a fine of not less than $2,500 but not more than $100,000 per day for each violation or to imprisonment for not less than two years but not more than ten years, or both.* (Footnote omitted.) (Emphasis added.)

\* \* \* \* \* \*

process. In fact, the penalties imposed here are less stringent than those imposed by Section 606 of the SWMA. The Pollution of Waters section of the Fish and Game Code is intended to protect fisheries and wildlife and the $10 penalty for each fish killed is appropriate for the harm and not excessive. *Church.*

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this 6th day of January, 1995, the order of the Court of Common Pleas of Westmoreland County dated October 21, 1992, at No. 3255C 1991, is reversed.

FRIEDMAN, Judge, dissenting.

Here, an "Act of God" directly caused the train derailment leading to the pollution of the Youghiogheny River. Consequently, I believe that CSX Transportation, Inc. (CSX) cannot be held legally responsible for the corn syrup leakage and the subsequent pollution of the river. CSX neither consciously intended to pollute the river nor consciously failed to prevent that pollution.

Section 2504(a)(2) of the Fish and Game Code, Act of October 16, 1980, P.L. 996, 30 Pa.C.S. § 2504(a)(2), permits the punishment of entities, such as CSX, who are entirely innocent of either the intent to pollute or a conscious omission to prevent pollution. As such, the statute fails to create a standard by which CSX can fairly be required to conform its conduct. Thus, I believe that section 2504(a)(2) of the Fish and Game Code, 30 Pa.C.S. § 2504(a)(2), violates CSX's due process rights.

Accordingly, I would affirm the trial court's decision. Indeed, due to the trial court's cogent and thorough analysis of the issue, I would adopt the trial court's opinion, which I attach to this dissent.

ATTACHMENT

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

Commonwealth of Pennsylvania

vs.

CSX Transportation, Inc., Defendant

No. 3225 C 1991

### OPINION AND ORDER

BY: RICHARD E. McCORMICK, Jr., Judge

In this prosecution for a violation of a provision of the Fish and Boat Code, 30 Pa.C.S.A. § 2504(a)(2), Pollution of waters, the defendant raises certain federal and state constitutional matters in a Motion to Quash the Information. Essentially, the defendant asks this Court to declare the particular statutory provision unconstitutional as violative of due process protections, and because it is unconstitutionally vague in that regard.

The defendant is a corporation that transports various substances by railroad car in interstate commerce throughout the United States. On August 23, 1989, it is alleged that the defendant had railroad tank cars containing certain substances travelling on railroad tracks at the unincorporated town of Reduction in South Huntingdon Township, Westmoreland County, along the Youghiogheny River. As a result of heavy rainfall and flooding in that vicinity, the railroad tracks holding the railroad cars in question were washed out from under the railroad cars, causing a derailment and damage to the tanks, and resulting in the spillage of certain substances potentially deleterious or destructive to fish, into the river. Two years less one day later, the Pennsylvania Fish Com-

mission caused a charge of pollution of waters to be filed against the defendant.

In pertinent part, the statute in question reads:

"(a) General rule.—No person, regardless of intent shall:

(2) Allow any substance, deleterious, destructive or poisonous to fish, to be turned into or allowed to run, flow, wash. or be emptied into any waters within or bordering on this Commonwealth."

Penalties for this offense, a misdemeanor of the third degree, are a fine of not less than $250.00 nor more than $5,000.00 or imprisonment not exceeding 90 days, as well as additional fines of $10.00 for each fish killed.

The defendant complains that the Commonwealth has charged it with a crime, the statutory description of which violates its rights to due process of law under the United States Constitution, Amendment XIV, and its rights pursuant to the law of the land under the Pennsylvania Constitution, Article 1, Section 9. The term "due process of law" and the term "law of the land" are to be considered legal equivalents. *Commonwealth v. Heck*, 341 Pa.Super. 183, 491 A.2d 212 (1985), affd. 517 Pa. 192, 535 A.2d 575 (1987).

This Court acknowledges that it should endeavor, in any way possible, to resolve any issues raised on constitutional grounds, with reference to nonconstitutional matters. *Ballou v. State Ethics Commission*, 496 Pa. 127, 436 A.2d 186 (1981). Principles of judicial restraint require such a resolution.

The defendant's objection is that, as a criminal provision that specifically imposes liability "regardless of intent," that is, without a required showing of criminal intent or *mens rea*, the statute in question must pass certain constitutional guidelines, and this statute does not.

At common law, it was recognized that "an injury can amount to a crime only when

inflicted by intention." *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The element of criminal intent was a requisite element of all crimes. Lawmaking bodies recognized the need to sanction certain results as being violative of the public welfare as society became more sophisticated and the potentials for harm to the populace increased by the happenstances of progress. Departures from the common law. standard of required criminal intent were countenanced in those areas "of neglect where the law requires care, or inaction where it imposes a duty." *Morissette*, above. Often times, sanctioned activity or inactivity has been countenanced in an area where the law has sought to minimize the overall risks of danger to the general population.

Thus, it is clear that we start with the general proposition that proof of a crime requires or presumes criminal intent. Statutes which find criminality without criminal intent must be shown to meet due process requirements, or meet standards of criminal liability as set forth statutorily.

Such strict criminal liability statutes ordinarily proscribe some kind of affirmative conduct. *Commonwealth v. Heck*, above, and certain of Pennsylvania's game laws, for example. For a statute to properly prohibit unintentional conduct, it must have as a standard, either *per se* blameworthiness, *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), or a situation in which the accused would not be surprised to learn that the conduct prohibited by the statute may be sanctioned as criminal conduct. *U.S. v. Freed*, above. See also, *United States v. Engler*, 806 F.2d 425 (1986) certiorari denied *Engler v. United States*, 481 U.S. 1019, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987). Although it is also applicable in an analysis of the void for vagueness of the statute argument, it is equally true in this analysis that the statute in question must provide standards by which a potential wrongdoer might measure their conduct so as to avoid criminal liability. "The accused, if he does not will the violation, usually is in a position to prevent it with no

more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." *Morissette*, above.

The Pennsylvania Crimes Code offers specific direction in this regard. While it is true that the act in question is not part of the Crimes Code, nevertheless that title has only been expressly indicated as inapplicable with regard to the penalty provisions. Those rules of construction and principals of culpability contained in the Crimes Code are pertinent and instructive in this instance.

Section 301 of the Crimes Code, 18 Pa.C.S. § 301, sets forth the requirements of either a voluntary act, or an omission to act based on a clearly defined standard, as the basis for criminal culpability.

"(a) General rule.—A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable.

(b) Omission as a basis of liability.—Liability for the commission of an offense may not be based on an omission unaccompanied by an act unless:

(1) the omission is expressly made sufficient by the law defining the offense; or

(2) a duty to perform the omitted act is otherwise imposed by law."

As is seen in Section 301, the imposition of criminal liability, even absent any requirement of proof of criminal intent, still requires the showing of a voluntary act or the omission to perform an act of which the actor is capable. In the instance of omission, it must be expressly made sufficient in the statute defining the offense or reflect a duty to perform imposed by law.

The difficulty presented with respect to the statute in question is the standardlessness inherent in the term "allows," and its use in the Fish and Boat Code. The term is not defined in the Code, but its dictionary definition in relevant part reads: "To let do or happen; permit." *The American Heritage Dictionary.* The commonly held meaning of the word in this context has a clearly passive connotation, one that does not admit of action or omission to act in circumstances in which the actor would have an awareness that the conduct prohibited constituted criminal conduct. This is precisely what is required by the phrase "(1) The omission is expressly made sufficient by the law defining the offense."

One can readily conceive of a myriad of situations in which the language of this statute would permit the punishment of persons or entities entirely innocent of either the intent to pollute, or a conscious omission to act to prevent pollution. In these particular circumstances, it was what is known in the insurance parlance as an act of God which directly caused the event which led to the alleged pollution of the river. Could the defendant have anticipated this situation, or was the defendant required to anticipate this situation, and take all necessary actions to prevent it? Just as this situation points out the standardlessness of the statutory language, so too can one predict any number of other scenarios to which criminal liability might attach, absent any omission to act in a way required under applicable concepts of strict liability.

The failure of the statute to create a standard by which the defendant can be fairly required to conform its conduct could be found to violate the due process rights of the defendant, under both the state and federal constitutions. The statute can also be found to be violative of the standards of culpability set forth in the Crimes Code. In positing a standardless possibility of criminal liability, the requirements of Section 301(b)(1) of the Crimes Code have been violated.

While this Court might well find a basis for declaring the legislative enactment herein, the Fish and Boat Code, 30 Pa.C.S.A.

§ 2504(a)(2), unconstitutional as argued by the defendant, I will more appropriately grant the Motion to Quash the Information based upon the failure of the statute to set forth a standard of culpability as contemplated by the Crimes Code requirements.

## ORDER OF COURT

AND NOW, to wit, this 21st day of October, 1992, based upon the foregoing Opinion, the defendant's Motion to Quash the Information is hereby GRANTED, the charge is dismissed, and the defendant is discharged.

By The Court:

/s/ <u>Richard E. McCormick, Jr.</u>

Judge Richard E. McCormick, Jr.

ATTEST:

---

Clerk of Courts

cc: Emily L. Smarto, Esquire
James M. Becker, Esquire
Court Administrator's Office—
Linda Lessick
Westmoreland Law Journal