City of Philadelphia Law Department   :
                                           :
           v.                            :
                                           :
John Macrillo,                      :    No. 1530 C.D. 2019
             Appellant       :    Argued: March 7, 2022

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                            FILED: April 11, 2022

John Macrillo (Macrillo) appeals from the Philadelphia County Common Pleas Court's (trial court) September 26, 2019 order (September 26, 2019 Order) that, *inter alia*, imposed a $248,075.00 absolute fine and an ongoing fine (Ongoing Fine) for violations of the Philadelphia (City), Pa., Code of General Ordinances (Code)[1] and prior trial court orders. Macrillo presents the following issues for this Court's review: (1) whether the trial court erred by finding Macrillo failed to comply with prior orders, and the Code, when it imposed the $248,075.00 fine, and whether the fine is constitutionally excessive; and (2) whether the September 26, 2019 Order directing the Ongoing Fine violated Macrillo's due process rights.

Macrillo owns a two-story building located at 1538 West Moyamensing Avenue in Philadelphia (Property). The Property is the end building in a row of adjoined structures and is zoned mixed-use (commercial use on the first floor and residential use on the second floor). On September 16, 2016, the City's Department

---

[1] Phila., Pa., Code §§ 1-101 to 22-1409 (2020).

of Licenses and Inspections (Department) inspected the Property, observed violations of Title 4 of the Code, and posted a stop work order on the Property. The violations pertained to Macrillo's failure to obtain necessary building, electrical, plumbing, and zoning permits for an addition he was constructing at the rear of the Property. On September 19, 2016, the Department served an Initial Notice of Violation and Order No. 555365 (Initial Notice), requiring Macrillo to correct the violations prior to an October 28, 2016 reinspection. The Initial Notice informed Macrillo that "[f]ines shall be imposed from the date of this [Initial N]otice and shall be assessed in the amount of $150[.00] to $2[,]000[.00] per violation each and every day the violation remains uncorrected." Reproduced Record (R.R.) at 18a. The Initial Notice also notified Macrillo that "[he] ha[d] the right to appeal the[] violations within thirty (30) days of the [d]ate of th[e] [Initial] Notice . . . ." R.R. at 17a.

On November 25, 2016, the Department reinspected the Property and determined that the violations remained. On November 28, 2016, the Department served a Final Warning on Macrillo, referencing the November 25, 2016 reinspection, declaring that the Property remains in violation, and listing the violations. The Final Notice informed Macrillo that "[f]ines shall be imposed from [September 19, 2016,] and shall be assessed in the amount of $150[.00] to $2[,]000[.00] per violation each and every day the violation[s] remain[] uncorrected." R.R. at 20a. The Final Warning also explained that Macrillo's "[f]ailure to comply with the terms of this [Final] Notice will result in an automatic assessment of reinspection fees . . . ." R.R. at 21a. Macrillo did not appeal from the Initial Notice or the Final Notice.

On March 23, 2017, the City filed a complaint in equity (Complaint) seeking injunctive relief and fines. *See* R.R. at 1a. The City attempted to serve Macrillo with the Complaint at several different addresses, but was unsuccessful.

The City filed a Petition for Alternate Service and, in response, the trial court granted the City leave to serve the Complaint by posting the Property. The City posted the Complaint at the Property on August 11, 2017.

On August 31, 2017, the trial court held its first hearing on the matter. Macrillo did not appear. *See* R.R. at 25a. The Department's inspector testified that he posted a stop work order on September 16, 2016 — at which time the addition was in its early stages. Notwithstanding, when the inspector returned in May 2017, the addition had been completed in violation of the stop work order. The City requested that the trial court fine Macrillo. On August 31, 2017, the trial court directed that $21,900.00 in fines be assessed against Macrillo if the violations were not corrected by October 26, 2017, and ordered Macrillo to immediately apply for the necessary permits (August 31, 2017 Order). *See* R.R. at 22a. Due to Macrillo's failure to respond to the Complaint, on September 19, 2017, the City filed a praecipe to enter a default judgment against him. Macrillo did not respond to the City's 10-day notice and, thereafter, did not move to lift the default judgment.

On October 26, 2017, the trial court held a hearing[2] at which Macrillo appeared pro se. Macrillo did not contest the violations, and explained:

> I will comply with everything I have to, I just had a lot of things going on with my life.
>
> . . . .
>
> I just been [sic] really jammed up with my personal life, so I couldn't really get to everything.
>
> I've been working - [the Department] told me to take down the structure because it was falling in the front and the back, so I did that and then I built it back up.

---

[2] *See* Notes of Testimony 10/26/2017 at 1-8. The Notes of Testimony for the October 26, 2017 hearing are not a part of the Reproduced Record.

3

And I do everything by [C]ode and over [C]ode. That's my main concern, safety first.

So [the Department] can come and inspect the [P]roperty any time. [It] can make an appointment with me any day. I can do it tomorrow or today.

*See* Notes of Testimony (N.T.) 10/26/2017 at 5.

The trial court issued an order (October 26, 2017 Order), *see* R.R. at 31a, directing Macrillo to apply with the Department for the necessary permits and submit a sealed engineer's report and architectural plans. The October 26, 2017 Order also required that Macrillo cease construction until the permits were obtained. The October 26, 2017 Order further imposed a $75.00 per day fine to become absolute if the violations were not corrected by January 30, 2018. The trial court scheduled the next hearing for January 16, 2018.

Macrillo did not appear at the January 16, 2018 hearing. *See* R.R. at 37a. The City notified the trial court that Macrillo had not been in contact with the Department as the trial court's October 26, 2017 Order required. The Department's inspector, referencing photographs of construction, testified that a deck had been built without a permit in the rear of the Property sometime between May 2017 and October 24, 2017, the Property's front façade had been modified to add an entrance for a new residential unit which exceeded the scope of the make-safe permit that had been issued for the Property pertaining to front façade structural damage, and the new unit's kitchen had been completed.

On January 16, 2018, the trial court issued an order (January 16, 2018 Order), *see* R.R. at 34a, requiring that, before the next status conference was conducted, Macrillo had to submit to the Department a structural engineer's report with drawings for all construction performed at the Property and a zoning application to address the use/occupancy change at the Property, and cease all construction at the Property. The January 16, 2018 Order also imposed a $72,600[.00] absolute

4

fine.[3]   Finally, the January 16, 2018 Order directed Macrillo to permit the Department to conduct interior and exterior Property inspections. The trial court scheduled another hearing for April 10, 2018, to determine the need for additional sanctions.

After being continued, the trial court hearing was conducted on August 28, 2018. At the hearing, the Department's attorney notified the trial court that "[a]bsolutely nothing has been done in compliance with [the January 16, 2018 Order]." R.R. at 54a. The Department's inspector added that he had visited the Property the day before and, although the electricity had been previously disconnected pursuant to an order from the Philadelphia Electric Company (PECO), it had been reconnected and an air conditioner was operating. The City's counsel and the Department's inspector apprised the trial court that the Property was zoned as a mixed-use, but not for multiple residences. Macrillo, who appeared pro se, testified that he applied for the necessary permits on May 28, 2018.[4] The Department's inspector confirmed that Macrillo submitted a building permit application, but declared that it was incomplete, and that a zoning change to multi-family use must be approved before a building permit could be issued. Macrillo acknowledged that he did not have the appropriate zoning permit before he began constructing the addition. Macrillo also explained that relatives occupying the Property had hooked up the electricity.

On August 28, 2018, the trial court ordered that, within 15 days, the Property must be vacated and all construction at the Property must cease, and the

---

[3] The fine represents a $150.00 per day fine for 484 days of violations. *See* R.R. at 45a.

[4] Macrillo claimed: "The reason why it was taking so long is because I was going through a divorce at the time and my son was in a lot of trouble, so I couldn't take the time to, you know, go at the time. But I stopped everything, and now I'm actually here to make it right, so." R.R. at 55a. The trial court reminded Macrillo that "this has been going on for two years . . . ." *Id*. at 55a-56a.

Property must remain vacant until Macrillo obtains the required zoning approval and permits and the addition has passed a final Department inspection (August 28, 2018 Order). *See* R.R. at 49a. The trial court declined the City's request for a $300.00 daily fine, but noted "that can be reconsidered at a later date." R.R. at 57a. The trial court scheduled the next hearing for October 11, 2018.

At the October 11, 2018 hearing, Macrillo appeared with counsel. The City requested the trial court to impose a $300.00 per day fine, order Macrillo to submit a complete application for zoning approval, require Macrillo to make the Property's front sidewalk safe for pedestrians, mandate that a certified engineer attest that the front façade is safe, and direct Macrillo to provide an engineer's report on the entire Property to ensure it is structurally sound. The City also informed the trial court that the electricity had again been illegally reconnected, and PECO was scheduled to disconnect it. Macrillo's counsel explained to the trial court that Macrillo agreed to the City's requests, but opposed a fine. On October 11, 2018, the trial court conditionally imposed a $300.00 per day fine from October 11, 2018 until Macrillo submitted the zoning application to the Department, created a safe pedestrian passageway, and provided an engineer's report to certify the Property's front wall and the entire structure was safe (October 11, 2018 Order). *See* R.R. at 60a. The trial court further ordered that it would impose a $10,000.00 fine if the electricity was again illegally reconnected.

The trial court held the next hearing on November 27, 2018, at which the City's and Macrillo's counsel informed the trial court that Macrillo had submitted permit applications, the Department was reviewing them, and the City and Macrillo had agreed upon the terms of a proposed order.[5] Under the proposed order, the City agreed to allow Macrillo an additional ten days to provide a safe pedestrian

---

[5] *See* N.T. 11/27/2018 at 3-5. The Notes of Testimony for the November 27, 2018 hearing are not part of the Reproduced Record.

6

walkway. If the Department's inspector did not approve the walkway, Macrillo would be permitted another two days to make corrections. In addition, the City afforded Macrillo 20 days to provide an engineer's report for the entire Property. The proposed order also included a conditional $300.00 per day fine if Macrillo did not timely comply. At the hearing's conclusion, the trial court issued the proposed order (November 27, 2018 Order). *See* R.R. at 69a, N.T. 11/27/2018 at 5.

On January 29, 2019, the trial court held a hearing and issued an order (January 29, 2019 Order), *see* R.R. at 72a, directing Macrillo to "[p]rovide the Department with an engineer's report that contains all requirements communicated by [the] City" prior to the next hearing. R.R. at 73a. The trial court also ordered a conditional $300.00 per day fine, to be made absolute if Macrillo failed to comply by March 28, 2019 — the date of the next scheduled hearing.

After a continuance, the trial court conducted the hearing on May 9, 2019, at which the City represented that the Department had not received the engineer's report addressing the matters described in the trial court's January 29, 2019 Order. *See* R.R. at 81a. The City also informed the trial court that all of the permits Macrillo originally sought had expired, so Macrillo would need to reapply. Further, the City requested that the trial court impose a $5,000.00 fine against Macrillo. Macrillo's counsel responded that Macrillo had provided an engineer's report to the Department, but the Department found it unsatisfactory. Macrillo claimed that his engineer's wife's serious illness had delayed the submission of a modified engineer's report. The trial court judge recalled that the engineer's wife's illness had been discussed at the January 29, 2019 hearing, stating: "That can't -- and I understand that is a tragic situation, but that can't always be the reason we can't move forward." R.R. at 82a.

Macrillo's counsel responded:

> We hired an expeditor. . . . One of the problems is that there was a problem with the plans. We went out and hired a new architect and got new plans drawn up. I have a small copy of those plans, but our expeditor has been informed by us that [he has] to get this done. I want [Macrillo] to be able to do something with the [P]roperty. The [P]roperty is locked up. I want him to move forward, as [Macrillo] wants to move forward. So that is the reason -- it is not as if [Macrillo has not] been doing anything. [He] ha[s] been doing things.

*Id.*

The trial court declared:

> What you have been doing has not been effective, so it is as if you are not doing anything. Every[ ]day there are statutory fines. If the City is asking for $5,000[.00], and with what [it is] saying with the number of violations that are outstanding on this [P]roperty, that does not even entail one day of fines. We have been here for two years. What is that? About 700 times 5, we are probably in excess of [6] figures when we talk about the outstanding fines on this [P]roperty. And we are still no farther than we were six months ago. So this doesn't amount to anything if we have to move the needle. They can ask for statutory fines, and the [trial c]ourt is not seeing any substantive, significant work trying to resolve the outstanding matter, I will give [the City] the fines [it is] seeking.

R.R. at 82a.

Macrillo's counsel asked that the trial court not impose any fines, but agreed that fines would be appropriate if "we do not have the permits by the next [trial court hearing scheduled for June 6, 2019.]" R.R. at 82a. Nonetheless, the trial court imposed a $5,000.00 absolute fine and reserved the City's right to seek additional fines at the next hearing, concluding: "[I]t is exasperating to talk about that we are here two-years plus and very little has been done. We will see where we are in 30 days, but the fine is going to be imposed as of today for $5,000[.00]." *Id.*

8

The trial court issued its order (May 9, 2019 Order), *see* R.R. at 75a, imposing the $5,000.00 fine, and requiring Macrillo to

> a. Comply with th[e] [trial c]ourt[']s January 29, 2019 [O]rder by submitting an engineer[']s report that contains all requirements communicated by the City; and

> b. [R]eapply for all of the expired and abandoned permits necessary to comply [sic] the outstanding violations.

R.R. at 78a.

On June 6, 2019, the parties asked the trial court to sign a proposed, stipulated order in which Macrillo agreed to

> a. Submit a building permit application to legalize all work on the [P]roperty within 30 days (or within 5 days of issuance of [the zoning permit for which Macrillo had applied);]

> b. . . . [D]o whatever is required to obtain [the zoning permit] as soon as possible[; and]

> c. If the building permit application referenced above is issued a "request for information" by the Department, [Macrillo] shall timely respond.

R.R. at 85a. The trial court signed the proposed, stipulated order (June 6, 2019 Stipulated Order). *See* R.R. at 85a. The June 6, 2019 Stipulated Order scheduled the next hearing for September 24, 2019, "to determine what sanctions are to be imposed against [Macrillo] for non-compliance with any terms of the [o]rders entered in this matter, including a determination of any fines and costs to be imposed against [Macrillo] and of any further appropriate relief." R.R. at 86a.

On September 24, 2019, the City's counsel asked the trial court to enter a final order requiring Macrillo to pay $248,075.00, representing the total of all fines ordered over the prior 12 hearings.[6] In addition, the City requested reinspection fees

---

[6] The City's counsel explained:

9

totaling $4,850.00 for 15 Property reinspections.[7]  Macrillo's counsel did not dispute the number and dates of the City's reinspections.

Macrillo's counsel responded that Macrillo had submitted a zoning permit application, but claimed that Macrillo had received an August 27, 2019 letter from the Department seeking additional information.  The letter required such information to be provided within 60 days from the date of the letter or Macrillo's application would be abandoned and his plans disregarded.  *See* R.R. at 110a. Macrillo's counsel contended that, since Macrillo had submitted the zoning permit application and the City's August 27, 2019 response afforded Macrillo 60 days to

---

> The total statutory fine that the City could seek is $642,600[.00].  I will point out to the [trial c]ourt that the way I calculated this is four basic violations at a $150[.00] daily fine for 1,071 days from October 19, 2016[,] to present day.  I did calculate this fine in the light most favorable to [Macrillo] in two ways.  There were initially seven or eight violations in the notice of violation.  I felt some of them were duplicative, so I only counted them once.
>
> Secondly, although the [C]omplaint from the City pled a $300[.00] daily fine, based on the date of this [C]omplaint[,] I thought it may have been when the old law was in place[,] where a basic violation was a $150[.00] daily fine.  Therefore, I calculated it based upon four violations at $150[.00] for each day it has been out of violation.
>
> Now, the prior figure I gave you, the $248,075[.00,] is the amount ordered in conditional and absolute fines over the past 12 hearings . . . .

R.R. at 90a.

[7] With respect to the reinspection fees, the City's counsel stated:

> The way I calculated that is pursuant to the . . . [C]ode, the first inspection is free.  The first reinspection is free.  And the second reinspection, and any subsequent reinspections, are charged at a rate of $100[.00] for the first reinspection, $200[.00] for the second reinspection, and $350[.00] for any third or subsequent reinspection.
>
> At this point in time, the City has inspected this [P]roperty a total of 17 times; 15 of those are additional reinspections.

R.R. at 90a.

10

provide the necessary information, Macrillo was still in compliance with the June 6, 2019 Stipulated Order.

The City presented the Department's inspector's testimony regarding his inspections and the violations he observed at the Property. The Department's Construction Compliance Supervisor Robert Keenan (Supervisor Keenan) testified about Macrillo's applications. He explained that Macrillo had not submitted a satisfactory engineer's report. In addition to the engineer's report, Supervisor Keenan explained:

> [Macrillo] needs a zoning permit. And if he is denied for zoning for what he . . . had built, then [he is] able to apply for a variance and go in front of the [Zoning Board of Adjustment (ZBA)], which has not been addressed at any time [n]or has he gone in front of the [ZBA] to [the Department's] recollection. After that approval, if he is allowed to build what he . . . would like to build, then [he is] able to apply for the permits with that letter and then [a] variance. So if he wants a three-story addition with a rooftop deck, as this proposed, any person can take that variance, draw up the plans with the right structural membranes utilized, supplied with an engineer's report, [the Department] can take that plan and accept it as a safe structure. At this time, [the Department does] not have any information of that.

R.R. at 98a.

Supervisor Keenan elaborated:

> There is a whole lot that needs to be accomplished here to get this into compliance.
>
> . . . .
>
> As I stated, first off, [Macrillo] needs a variance for the approval of some of the things he built. He definitely needs a structure[al] engineer to say what he has done, a reputable engineer that should be on the [C]ity listing. [The Department has] a website that [one can] go on to see all the licensed engineers. [Macrillo] need[s] the variance

11

to get it started, approved plans, and [he is] going to need . . . building permits for all these things. But each area that [Macrillo] has gone and extended . . . might require a plan. For example, the footings were never inspected; [the Department] need[s] a detail of how that was done. The foundation that was added on, the engineer can sign off that to show . . . a drawing to our planner. When [the Department] move[s] up, some of the extra structural support that may be required for the added loads, remediation of all the mold inside, which is probably an interior demo permit at this time I would imagine to remove all the sheetrock and possibly clean up any kind of contaminants in there. The third floor is an issue, but I do not know if there is water damage. Again, [the Department] need[s] to see where [Macrillo is] at, at this stage, inside the [P]roperty. Electrical issues, [Macrillo] needs a plan for that. He may need a fire alarm. The question here would be: How much structure in the front - - is it attached? [The Department does] not know if that front wall, that was redone, is attached properly to the building. [It has] no idea. So there are many areas . . . we asked these questions.

R.R. at 98a-99a.

Following Supervisor Keenan's testimony, at Macrillo's counsel's request, the trial court continued the hearing until September 26, 2019, for closing arguments. On September 26, 2019, the trial court rejected Macrillo's counsel's attempt to reopen the record to offer additional exhibits. After closing arguments, the trial court issued the September 26, 2019 Order, granting the City's request for $248,075.00 in fines and $4,850.00 in reinspection fees. *See* R.R. at 135a. Therein, the trial court itemized the absolute fines as follows:

6. Since [Macrillo] was served, there have been thirteen (13) hearings in this instant matter, as follows:

a. On August 31, 2017, the [trial court] ordered a conditional fine in the amount of $21,900.00 against [Macrillo]. "This conditional fine is to be made absolute if the violations present at subject premises are not corrected in accordance with this [o]rder, by

12

October 26, 2017." The violations were not corrected by October 26, 2017, and the conditional fine of $21,900.00 is now absolute.

b. On October 26, 2017, the [trial court] ordered a daily fine of $75.00 against [Macrillo]. "This daily fine shall be aggregated as of the date first written above and shall be made absolute if the violations present at the subject premises are not corrected in accordance with this [o]rder by January 30, 2017." It appears that January 30, **2017** was a [s]crivener's [e]rror and should be January 30, **2018**. The violations were not corrected by January 30, 2018, and the conditional daily fine of $75.00 from October 26, 2017 through January 30, 2018[,] is now absolute and calculated, as follows: $75.00 x 97 days = $7,275.00.

c. On January 16, 2018, [the trial court] ordered an absolute fine of $72,600.00 against [Macrillo].

d. At the April 10, 2018 hearing, [Macrillo] was granted a continuance over the City's objection.

e. At the May 8, 2018 hearing, [Macrillo] was granted a second continuance.

f. At the August 28, 2018 hearing, the violations were still not complied, but an additional fine was not imposed.

g. At the October 11, 2018 hearing, [the trial court] ordered a conditional daily fine of $300.00 to be imposed from October 11, 2018 "until the Department has deemed the [P]roperty to be in compliance with the . . . Code." This conditional daily fine is now absolute and calculated, as follows: $300.00 daily fine x 349 days ([October 11, 2018 - September 24, 2019]) = $104,700.00.

h. At the Nov[em]ber 27, 2018 hearing, a conditional fine of $300.00 per day was imposed upon [Macrillo] and was "to be made absolute if the conditions present at [the] subject premises are not corrected in accordance with [p]aragraph 4 above." [Macrillo] failed to comply with all of the conditions of the aforementioned [p]aragraph 4. This conditional fine is now absolute and

calculated as follows: $300.00 daily fine x 64 days ([November 27, 2018 - January 29, 2019]) = $19,200.00.

i. At the January 29, 2019 hearing, a conditional fine of $300.00 per day was imposed upon [Macrillo] and "is to be made absolute if the violations present at the subject premises are not corrected in accordance with this [o]rder, by [March 28, 2019]." [Macrillo] failed to comply the violations by March 28, 2019. This conditional fine is now absolute and calculated as follows: $300.00 daily fine x 58 days ([January 30, 2019 - March 28, 2019]) = $17,400.00.

j. The March 28, 2019 hearing was continued due to [Macrillo]'s hospitalization.

k. At the May 9, 2019 hearing, [the trial court] ordered a $5,000.00 absolute fine against [Macrillo] to be paid within thirty (30) days.

l. At the June 6, 2019 hearing, an additional fine was not ordered.

m. During the September 24, 2019 hearing, testimony was presented from [a Department i]nspector[] . . . and [Supervisor] Keenan. The hearing was bifurcated, to accommodate defense counsel's court calendar, to September 26, 2019[,] for final arguments and a ruling. An additional fine was not ordered.

7. During the prior thirteen (13) hearings, fines totaling $248,075.00 ($21,900.00 + $7,275.00 + $72,600.00 + $104,700.00 + $19,200.00 + $17,400.00 + $5,000.00) have been ordered against [Macrillo] and in favor of the City.

September 26, 2019 Order at 2-4, R.R. at 136a-138a. In addition, the trial court ordered Macrillo to bring the Property into compliance. Further, the trial court imposed the Ongoing Fine as follows:

For each day that [Macrillo] fails to repair, abate, and/or remediate the violations at the [Property] after September 26, 2019, [Macrillo] shall pay a daily fine of $600.00 until the Department has verified compliance upon a

14

> re[]inspection request made by [Macrillo]. The aggregated daily fines shall be reduced to and entered as a judgment against [Macrillo] and in favor of the City . . . after each thirty (30)[-]day period upon the filing of a [p]raecipe by the City. The City may file a judgment after each thirty (30)[-]day period in which [Macrillo] has failed to repair, abate, and/or remediate the violations for at least one (1) day.

R.R. at 141a-142a. Macrillo appealed to this Court.[8] On December 18, 2019, the trial court issued its opinion (Opinion).

Macrillo first argues that the trial court erred by concluding that he failed to comply with the June 6, 2019 Stipulated Order, prior orders, and the Code, when it imposed the fine, and that the fine is unconstitutionally excessive. However, in his brief, Macrillo only specifically challenges his compliance with the June 6, 2019 Stipulated Order, the October 11, 2018 Order, and the November 27, 2018 Order.

With respect to the June 6, 2019 Stipulated Order, Macrillo asserts that the order "clearly provided [Macrillo] the opportunity to submit a building permit application, wait for the application to get approved, and then submit a building permit application[.]" Macrillo Br. at 31. The June 6, 2019 Stipulated Order required Macrillo, *inter alia*, to "[s]ubmit a building permit application to legalize

---

[8] Generally, a trial court's imposition of a civil penalty is reviewed for an abuse of discretion. *See Borough of Kennett Square v. Lal*, 643 A.2d 1172 (Pa. Cmwlth. 1994). "[Abuse of discretion] is a high standard, which requires that [this Court] abide by a trial court's decision absent 'bad faith, fraud, capricious action or abuse of power.'" *City of Phila. v. Shih Tai Pien*, 224 A.3d 71, 80 (Pa. Cmwlth. 2019) (quoting *D.Z. v. Bethlehem Area Sch. Dist.*, 2 A.3d 712, 722 (Pa. Cmwlth. 2010)).

> This Court has ruled that "[a] trial court abuses its discretion if, in reaching a conclusion, the law is overridden or misapplied or judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will. An abuse of discretion is not merely an error of judgment."

*City of Phila. v. DY Props., LLC*, 223 A.3d 717, 724 (Pa. Cmwlth. 2019) (quoting *In re Ten Thousand Six Hundred Eighty Dollars*, 728 A.2d 403, 406 (Pa. Cmwlth. 1999) (citation omitted)).

all work done at [the P]roperty within 30 days (**or** within 5 days of [the] issuance of [the zoning permit for which Macrillo had applied.])" R.R. at 86a (emphasis added). Macrillo asserts that, because the presence of the word "or" authorized him to wait until the zoning permit's issuance to apply for the building permit, he did not violate the June 6, 2019 Stipulated Order by not submitting a building permit application within 30 days. *Id.* The trial court explained in its Opinion that "[t]he [June 6, 2019 Stipulated] Order [did] not state that [Macrillo] need not submit a building permit until the zoning permit was issued. To date[,] the violations have not been remedied and the [P]roperty remains in violation of the . . . Code." Opinion at 7.

The trial court did not impose a fine against Macrillo for violating the June 6, 2019 Stipulated Order. Indeed, the trial court clearly stated in its September 26, 2019 Order that "an additional fine was not ordered." R.R. at 138a. Further, the June 6, 2019 Stipulated Order scheduled the September 24, 2019 hearing for the purpose of "determin[ing] what sanctions are to be imposed against [Macrillo] **for non-compliance with any terms of the** [o]**rders entered in this matter**, including a determination of any fines and costs to be imposed against [Macrillo] and of any further appropriate relief." R.R. at 86a (emphasis added). Nothing in the June 6, 2019 Stipulated Order waived the trial court's previously ordered fines.[9] As the trial

_____

[9] According to the trial court's September 26, 2019 Order, those fines were:
1. $21,900.00 (August 31, 2017 Order) - for failure to comply with August 31, 2017 Order (became absolute when violations were not corrected by October 26, 2017).
2. $7,275.00 (October 26, 2017 Order) - representing daily $75.00 fine for violations at the Property, from October 26, 2017 to January 30, 2018 (became absolute when not corrected by January 30, 2018).
3. $72,600.00 (January 16, 2018 Order) - representing daily $150.00 fine for 484 days for violations at the Property (ordered as absolute fine).
4. $104,700.00 (October 11, 2018 Order) - representing daily $300.00 fine until complete zoning application is submitted and enumerated conditions in the October 11, 2018 Order are met, running from October 11, 2018 to September 24, 2019.
5. $19,200.00 (November 27, 2018 Order) - representing daily $300.00 fine for violations at the Property ordered to be addressed therein, running from November 27, 2018 until January 29, 2019.

16

court observed, whether or not Macrillo adhered to the June 6, 2019 Stipulated Order, the Property remains in violation until the violations are remedied. Thus, Macrillo's argument relative to the June 6, 2019 Stipulated Order is meritless.

Macrillo also asserts that the trial court erred by determining that he failed to comply with the October 11, 2018 and the November 27, 2018 Orders.

With respect to the October 11, 2018 Order, Macrillo contends that

> [he] complied with the terms contained therein by applying for the zoning relief "to legalize the use and occupancy of the subject premises" and by blocking the sidewalk in front of the [Property] in order [to] create a "safe passage" for pedestrians. Nevertheless, the trial court held that [Macrillo] did not comply with the terms of the October 11, 2018 Order [—] a determination which was made in clear disregard with the weight of the evidence presented, thereby constituting reversible error.

Macrillo Br. at 31-32.

In addition to mandating that Macrillo block the front sidewalk to create a safe passage for pedestrians and submit an engineer's report to certify the Property's front wall and the entire structure was safe, the October 11, 2018 Order required Macrillo to "apply for zoning to legalize the use and occupancy of the [Property]." R.R. at 61a. It also conditionally imposed "a fine in the amount of $300[.00] per day . . . until [Macrillo] [took] the necessary steps to submit to the [Department] an application for the proper zoning **deemed complete by the Department**." *Id.* (emphasis added). At the September 24, 2019 hearing, the City presented testimony that Macrillo's zoning application was still deficient. *See* R.R.

---

6. $17,400.00 (January 29, 2019 Order) - representing daily fine of $300.00 per day until complete engineer's report was submitted, running from January 30, 2019 until March 28, 2019.
7. $5,000.00 absolute fine (May 9, 2019 Order) for violations at the Property and failure to comply with prior orders.

*See* R.R. at 135a-138a.

17

at 93a-96a. Accordingly, because there was substantial evidence to demonstrate that Macrillo had not complied with the October 11, 2018 Order, the trial court did not abuse its discretion by imposing the fine for Macrillo's violation thereof.

The November 27, 2018 Order required Macrillo to submit an engineer's report for the Property within 20 days, and imposed a $300.00 daily fine for non-compliance. Macrillo asserts that, because he submitted an engineering report to the Department, was awaiting review of permit applications, and made a safe passageway for pedestrians, the trial court erred when it found he did not comply with the November 27, 2018 Order. At the September 24, 2019 hearing, the Department's inspector testified that, on December 20, 2018, the Department received an engineer's report from Macrillo, but the report "did not address the issues that [the Department] requested. It talk[ed] mostly about the existing portion of the building, and not the rear addition[.]" R.R. at 96a. Further, the engineer's report lacked a licensed engineer's seal. *See* R.R. at 98a. The ongoing deficiencies with the engineer's report were addressed in the January 29, 2019 Order and May 9, 2019 Order. Accordingly, there is substantial evidence that Macrillo did not comply with the November 27, 2018 Order, and the trial court did not abuse its discretion when it imposed the fine for violation thereof.

With respect to Macrillo's excessive fine argument, this Court rejected a similar argument in *City of Philadelphia v. DY Properties, LLC*, 223 A.3d 717 (Pa. Cmwlth. 2019), wherein the City fined a property owner for its ongoing failure to address Code violations. The *DY Properties* Court found that the appellant had waived his excessive fines argument, but explained in dicta that even if it had addressed the issue, it would have found the fines constitutional, expounding:

> The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed . . . ." U.S. Const. amend. VIII. The Pennsylvania Constitution similarly provides:

18

"Excessive bail shall not be required, nor excessive fines imposed . . . ." Pa. Const. art. I, § 13. A fine is excessive "if it is grossly disproportional to the gravity of a defendant's offense." *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998). The Pennsylvania Supreme Court has explained:

> [T]he primary purpose of a fine or a penalty is twofold[:] to punish violators and to deter future or continued violations. Since it serves not only as a punishment but also as a deterrent, the amount of the fine can be raised to whatever sum is necessary to discourage future or continued violations, subject, of course, to any restriction imposed on the amount of the fine by the enabling statute or the Constitution.

[*Commonwealth v.*] *Eisenberg*, 98 A.3d [1268,] 1283 [(Pa. 2014)] (quoting *Commonwealth v. Church*, . . . 522 A.2d 30, 34 (Pa. 1987)). Thus, a fine must be "reasonably proportionate to the crimes which occasion them." *Eisenberg*, 98 A.3d at 1287. However, "[the Pennsylvania Supreme Court] and the Commonwealth Court have rejected the notion that there must be strict proportionality between the harm resulting from the offense and the penalty imposed." *Eisenberg*, 98 A.3d at 1281.

In *Eisenberg*, the [Pennsylvania Supreme] Court found that the $75,000.00 fine imposed for a misdemeanor theft of $200.00 was constitutionally excessive. *Id*. at 1287. Citing to *Church* and two Commonwealth Court cases, *Eckhart v. Department of Agriculture*, 8 A.3d 401 (Pa. Cmwlth. 2010), and *Commonwealth v. CSX Transportation, Inc.*, 653 A.2d 1327 (Pa. Cmwlth. 1995), the *Eisenberg* Court distinguished the fines imposed therein, explaining:

> In *Church*, overweight vehicles were fined on a sliding scale **per pound** over the weight limit. In *Eckhart*, the appellant kennel operator had committed numerous infractions incurring a fine amount in excess of $150,000[.00] based on a $100[.00]-$500[.00] **per dog/per day** penalty scheme,

19

> $15,000[.00] of which appellant claimed was excessive in light of perceived triviality of the offense. In *CSX*, the appellant's train car leaked enough corn syrup into the Youghiogheny River to kill approximately 10,000 fish, and thus appellant incurred a roughly $100,000[.00] fine, based on a $10[.00] **per fish** calculation.

*Eisenberg*, 98 A.3d at 1287 n.24.

> Here, the fines issued against [the property owner] were similarly imposed per day based upon repeated daily violations of numerous Code provisions. The violations pertained to potentially hazardous conditions on the [p]roperty which remained for approximately eight months, despite City demands to remediate. Thus, the significant fine was an accumulation of penalties arising solely from [the property owner's] repeated and ongoing failure to correct the violations.

*DY Props.*, 223 A.3d at 723 n.12.

In the instant matter, the trial court's fines represent an accumulation of penalties resulting from Macrillo's repeated and ongoing failure to cure violations at the Property that have continued for almost three years, despite numerous hearings and trial court orders. As the trial court described in its Opinion:

> The subject premises has been under violation of the . . . Code since 2016, and at the last [trial c]ourt hearing of September 26, 2019, [Macrillo] has not taken any steps to comply with the [trial c]ourt's [o]rders. The Department . . . ha[s] inspected the subject premises for a total of fifteen (15) times. The City . . . has imposed conditional fines at every [trial c]ourt listing, however, [Macrillo] has failed to come into compliance with the Code since the initial Notices of Violation went out. The violations at the [Property] are subject to a daily fine of $150[.00]-$300.00 [per] day, in accordance with . . . the . . . Code. The City is entitled to a total fine of $643,800.00; however, [it has] reduced the fine amount to $248,075.00. The City is entitled to a total fine of $643,800.00. However, the City is only seeking a total

20

> fine of $248,075.00. This is less than half of the amount the City is entitled to seek.
>
> There has been illegal electrical and plumbing work conducted on the [Property]. The [Property] is surrounded with neighboring buildings that may be put at risk due to possible electrical shortages. Mold has been found within the subject premises. The [P]roperty was ordered by [the trial c]ourt to be vacated, however, there are people living in the building[] who are at risk. [Macrillo] failed to remedy the violations on the [P]roperty and failed [to] exhaust administrative remedies[,] deeming all violations to be admitted.

Opinion at 9 (citations omitted). Under these circumstances, this Court concludes that the fines the trial court assessed against Macrillo were not unconstitutionally excessive.

Macrillo also argues that the Ongoing Fine imposed in the September 26, 2019 Order: grants the City the "unfettered discretion" to determine whether Macrillo has complied therewith, further authorizes the City to impose $600.00 in fines per day for violation of the Order, and permits the City to enter judgment on the fines every 30 days. Macrillo asserts that the Ongoing Fine in the September 26, 2019 Order deprives Macrillo of a hearing and an opportunity to be heard or the ability to otherwise challenge the City's determination that he has violated the September 26, 2019 Order. The City rejoins that Macrillo's due process argument is "based on hypothetical future events that will not occur, and is therefore not a live case or controversy." City Br. at 33.

> This Court has explained:
>
> [A]n action "may not be employed to determine rights in anticipation of events which may never occur . . . or as a medium for the rendition of an advisory opinion which may prove to be purely academic." [*Brown v. Pa. Liquor Control Bd.*, 673 A.2d 21, 23 (Pa. Cmwlth. 1996).] An issue that "may" arise in the future "is not considered 'ripe' for judicial interpretation." *Id.* (citation omitted).

21

*DeNaples v. Pa. Gaming Control Bd.*, 150 A.3d 1034, 1040 (Pa. Cmwlth. 2016). Here, because the City has not sought to reduce any prospective fines to judgment, the Ongoing Fine in the September 26, 2019 Order has not deprived Macrillo of his due process rights, and the matter is not now ripe for review.[10]

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[10] This Court recognizes that, if the City enters judgment against Macrillo without a hearing on fines arising from his continued failure to satisfactorily cure the violations at the Property, Macrillo could raise the due process issue on appeal from that ruling.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia Law Department    :
                                       :
                    v.                 :
                                       :
John Macrillo,                         :    No. 1530 C.D. 2019
                    Appellant          :

### O R D E R

AND NOW, this 11th day of April, 2022, the Philadelphia County Common Pleas Court's September 26, 2019 order is affirmed.


_____
ANNE E. COVEY, Judge