J-A19035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INT. OF: C.J.S., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.J.S., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 866 MDA 2021 |

Appeal from the Order Entered June 23, 2021
In the Court of Common Pleas of Luzerne County Juvenile Division at
No(s): CP-40-JV-0000190-2018

| IN THE INT. OF: C.J.S., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.J.S., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 867 MDA 2021 |

Appeal from the Order Entered June 30, 2021
In the Court of Common Pleas of Luzerne County Juvenile Division at
No(s): CP-40-JV-0000190-2018

BEFORE: BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: OCTOBER 11, 2022**

C.J.S., A Minor, appeals from the Dispositional Order entered in the Court of Common Pleas of Luzerne County on June 23, 2021, upholding the restitution award of $35,150.00 imposed on July 1, 2019, and providing him a credit in the amount of $1,000.00, and from the Dispositional Review Order

---

[*] Former Justice specially assigned to the Superior Court.

entered on June 30, 2021, denying C.J.S.'s motion to waive or strike restitution and to terminate his probation. Following our review, we quash Appellant's appeal from the June 23, 2021, Order and affirm the trial court's June 30, 2021, Order.[1]

In its Memorandum Issued Pursuant to Pa.R.A.P. 1925(a), the juvenile court, the Honorable Jennifer L. Rogers, set forth the relevant facts and procedural history herein as follows:

> On July 2, 2018, the juvenile, C.J.S. was charged with homicide by motor vehicle, a felony of the third degree and other offenses due to a motor vehicle collision occurring on June 13, 2017 in Butler Township, Luzerne [C]ounty, Pennsylvania. At the time of the accident, the juvenile, age 17 at the time, was the driver of the vehicle accompanied by two other passengers. One of the passengers, J.M.P., age 17, died due to sustaining multiple traumatic injuries from the collision. The other passenger, G.D.C. was ejected from the vehicle, sustained severe injuries and was air flighted by helicopter to a hospital. (See Order and Opinion dated July 1, 2019).
> On September 12, 2018, the juvenile, C.J.S. was adjudicated delinquent on one count of homicide by motor vehicle, 75 Pa. C.S.A. Section 3732(a), F-3 and was placed on probation with the Luzerne County Juvenile Probation Department for a period of six months with the issue of restitution remaining open. The Juvenile completed his six months of probation successfully and was transferred to administrative probation pending the outcome of the restitution hearing. (See Stipulation for Restitution Hearing dated May 29, 2019)
> On May 29, 2019, at the restitution hearing, the Juvenile and the Commonwealth entered into a stipulation. With respect to the deceased juvenile, J.M.P., the Commonwealth indicated that

_____

[1] In a *Per Curiam* Order entered on August 12, 2021, upon noting a review of these matters indicated that these appeals involve the same Appellant and similar issues, this Court consolidated the appeals at Nos. 866 and 867 MDA 2021 pursuant to Pa.R.A.P. 513 and Pa.R.A.P. 2138 *sua sponte*.

his family has been made whole and that the Commonwealth was no longer seeking any further restitution for the decedent. N.T. 5/29/19 at 6.

The parents of the minor child, G.D.C., who was severely injured in the motor vehicle accident, were seeking restitution for a Blue Cross Subrogation Lien in the amount of $33,682.00; Victims Compensation Assistance Program (VCAP) subrogation lien in the amount of $6,458.00 and miscellaneous expenses (food, tolls, mileage, and hotel fees) in the amount of $2,148.00. As part of the stipulation, the Commonwealth and the Juvenile agreed that the miscellaneous expense of $2,148.00 was not recoverable as restitution in juvenile court.

On July 1, 2019, the Honorable Fred A. Pierantoni entered an order of restitution to G.D.C. awarding the minor the sum of $40,140.00 through an installment plan in accordance with title 42 Pa. C. S. Section 6352(a)(5) and section 9728(a). The sum of $40,140.00 covered the expense from the Blue Cross Subrogation Lien in the amount of $33,682.00 and the expense of the VCAP Subrogation Lien in the amount of $ 6,458.00.

Judge Pierantoni, in his Order, relied mainly on the Superior Court case of *Commonwealth v. B.D.G*. 959 A. 2d 362 (Pa. Super. 2008) and Pennsylvania statutes, 42 Pa. C.S.A. section 6352 (a)(8) and section 9728. In addition, Judge Pierantoni also considered the stipulated facts entered between the juvenile C.J.S. and the Commonwealth on May 29, 2019. (See Opinion and Order of July 1, 2019). More specifically, the Commonwealth and the Juvenile agreed in a written stipulation, that the court shall rely upon the controlling case and statute in making a determination regarding restitution. Paragraph 16 of the stipulated facts states as follows: "The issue of Ordered restitution in a Juvenile proceeding is controlled by the Juvenile Act, 42 Pa.C.S.A. Section 6352, and by the analysis set forth in *Commonwealth v. B.D.G.*, 959 A.2d 362 (Pa. Super. 2008)."

On June 14, 2021, the juvenile, C.J.S., filed a motion to terminate probation pursuant to Pa. R.J.C.P. 632, waive outstanding restitution and continue the dispositional hearing scheduled for June 15, 2021. The juvenile alleged that he successfully completed all the terms and conditions of his probation, except for the outstanding payment of restitution in the amount of $36,250.00. Therefore, the juvenile requested that the remaining and outstanding balance of restitution be stricken and waived by the court.

On June 22, 2021, following a juvenile review hearing, the court entered an Order filed on June 23, 2021 finding that the

restitution Order of $35,150.00 was to stand and that the juvenile [was] to be credited for his $1,000.00 of community service. On June 29, 2021, the [c]ourt entered a Dispositional Review Order denying the juvenile's request to waive restitution and terminate his probation and finding that the restitution previously ordered shall stand with the juvenile remaining on administrative probation until his twenty-first (21st ) birthday at which time his probation would be terminated and a judgment would be filed relating to the remaining balance.

On July 1, 2021, the juvenile, C.J.S., filed a Notice of Appeal to the court's orders dated June 22, 2021 and June 29, 2021. On July 7, 2021, the court entered an order directing the appellant to file of record and serve on the trial judge a Concise Statement of Matters Complained of on Appeal within twenty-one (21) days from the date of the order's entry on the docket. On the 28th day of July 2021, the Appellant filed a Concise Statement of Matters Complained of on Appeal[.]

Memorandum Issued Pursuant to Pa.R.A.P. 1925(a), filed 8/27/21, at 1-3.

In his brief, C.J.S. presents the following Statement of the Questions

Involved:


1. Did the Juvenile Court err and/or abuse its discretion in determining that it did not have the authority to waive or reduce restitution at C.J.S.'s final dispositional review hearing, depriving him of a meaningful opportunity to be heard on this issue in violation of statute, court rules, and constitutional due process?

2. Did the Juvenile Court exceed its jurisdiction and/or abuse its discretion under the Juvenile Act by denying C.J.S.'s request for relief and ordering adult criminal collections, where the record shows the restitution exceeded C.J.S.'s earning capacity while under juvenile court jurisdiction, and where C.J.S. made consistent good-faith efforts to pay?

3. Did the Juvenile Court err by punishing C.J.S. more harshly for being poor when it imposed lasting negative consequences including debt, exposure to adult criminal collections, and the inability to seek expungement, punishment more severe than a child from a more financially stable family would face, solely because he was unable to pay the restitution balance in full, in

violation of the Equal Protection and Due Process clauses of the United States Constitution (U.S. Const., amend. XIV) and Pennsylvania Constitution (Pa.9 Const. art. 1, §§ 1, 26)?

4. Did the Juvenile Court err in failing to relieve C.J.S. from his obligation to pay restitution because the restitution order is grossly disproportionate to the child's ability to pay, will impede his future ability to maintain a livelihood, and serves as extended punishment, in violation of the Excessive Fines Clause of the Eighth Amendment of the United States Constitution and article 1, section 13 of the Pennsylvania Constitution?

Brief for C.L.S. at 8-9. As these issues are interrelated, we will consider them together.

This Court's standard of review of dispositional orders in juvenile proceedings is well-settled:

> "The Juvenile Act grants broad discretion to the court when determining an appropriate disposition. We will not disturb a disposition absent a manifest abuse of discretion." "*In re R.D.R.,* 876 A.2d 1009, 1013 (Pa.Super.2005) (internal citation omitted). Moreover, "[a] petition alleging that a child is delinquent must be disposed of in accordance with the Juvenile Act. Dispositions which are not set forth in the Act are beyond the power of the juvenile court." *In re J.J.,* 848 A.2d 1014, 1016–1017 (Pa.Super. 2004) (citation omitted).

> > Further, one of the purposes of the Juvenile Act is to hold children accountable for their behavior. Accordingly, the Juvenile Act authorizes the court to "order[ ] payment by the child of reasonable amounts of money as fines, costs or restitution as deemed appropriate as part of the plan of rehabilitation concerning the nature of the acts committed and the earning capacity of the child." 42 Pa.C.S.A. § 6352, Disposition of delinquent child, (a) General rule.-(5). Consistent with the protection of the public interest and the community, the rehabilitative purpose of the Juvenile Act is attained through accountability and the development of personal qualities that will enable the juvenile offender to become a responsible and

productive member of the community. Thus, the policies underlying the Juvenile Act and its restitution provision, as well as the plain language of Section 6352, serve to invest the juvenile court with a broad measure of discretion to apportion responsibility for damages based upon the nature of the delinquent act and the earning capacity of the juvenile. *In re M.W.,* 555 Pa. 505, 512–513, 725 A.2d 729, 732–733 (1999).

*Appeal of B.T.C.,* 868 A.2d 1203, 1204–1205 (Pa.Super.2005). In reviewing an order of restitution, discretion is abused where the order is speculative or excessive or lacks support in the record. *In Interest of Dublinski,* 695 A.2d 827, 829 (Pa.Super.1997). . . .

*Commonwealth v. B.D.G.*, 959 A.2d 362, 366–67 (Pa.Super. 2008) (en banc).

Unlike restitution imposed in connection with probation, under Section 6352(a)(5) and the underlying policies of the Juvenile Act, the juvenile court is invested "with a broad measure of discretion to apportion responsibility for damages based upon the nature of the delinquent act and the earning capacity of the juvenile." *Appeal of B.T.C.*, 868 A.2d at 1205 (citation omitted).

Moreover,

[I]n fashioning a restitution award the juvenile court must consider the following four factors: "(1) [t]he amount of loss suffered by the victim; (2) [t]he fact that defendant's action caused the injury; (3) [t]he amount awarded does not exceed defendant's ability to pay; [and] (4) [t]he type of payment that will best serve the needs of the victim and the capabilities of the defendant."

*B.D.G.*, 959 A.2d at 367 ("*Dublinksi* factors") (quoting *In Interest of Dublinski*, 695 A.2d 827, 829 (Pa.Super. 1997)). In considering the second factor, the juvenile court may engage in a "but for" analysis, *i.e.*, "[the

juvenile] will be liable for restitution for all damages which would not have occurred but for [the juvenile's] criminal conduct." **B.D.G.**, 959 A.2d at 367 (quoting **Dublinski**, 695 A.2d at 830).

Initially, we must determine whether C.J.S. is entitled to relief from the Order entered on June 23, 2021, which upheld the restitution award previously issued by Judge Pierantoni in the Order of July 1, 2019. The juvenile court found that review of all claims presented herein is from that original Dispositional Order. In doing so, the court reasons that in filing the instant appeal, C.J.S. "is attempting to have a 'second bite of the apple' because he is attempting to relitigate the same issues before this [c]ourt which were previously addressed by a prior [c]ourt." Memorandum Issued Pursuant to Pa.R.A.P. 1925(a), filed 8/27/21 at 6. The juvenile court further states:

> A previous Court Order, entered on July 1, 2019, determined the juvenile's restitution. No appeal was filed to that Order by the Juvenile. Two years later, the juvenile attempted to re-litigate the same issue before this [c]ourt. There were no new rulings imposed upon the juvenile by the [c]ourt between July 1, 2019 and the date of the review hearing. In *In the matter of R.B.*, 765 A.2d 396 (Pa. Super. 2000), R.B. was adjudicated delinquent and placed at the Alternative Rehabilitation Communities, Inc. (ARC)[.] Following a review hearing, the trial court ordered continued placement for the juvenile at ARC and ordered the juvenile to submit to a medical evaluation at Johns Hopkins. The Superior Court in *In the matter of R.B.*, held that the review order was appealable due to the additional requirement of a medical evaluation ordered by the trial court which modified the original dispositional Order. *Id*. at 400.
>
> In the case at bar, the original dispositional order was entered on July 1, 2019. The Review Order entered by the [c]ourt on June 29, 2021 did not impose any additional requirement upon the Juvenile which was not already entered by the original dispositional Order. The original dispositional order directed the

- 7 -

juvenile, C.J.S., to make restitution in the sum of $40,140.00 through an installment plan in accordance with title 42 Pa. C.S.A. §6352(a)(5) and §9728(a). Pursuant to 42 Pa.C.S.A. §6352 (a)(5), the court has authority to maintain jurisdiction over the child until the restitution is paid in full or the child turns twenty-one (21) years old. In the event the child turns 21 prior to satisfying the restitution debt, any unpaid amount may be collected by the court under section §9728(a). The Juvenile was aware at the time that the original dispositional Order was entered that in the event the amount of restitution entered by the [c]ourt was not yet paid in full when he turns twenty-one (21) years of age, then the remaining unpaid amount would be collected by the [c]ourt. In fact, the juvenile entered into a written stipulation with the Commonwealth of Pennsylvania on May 29, 2019 stating in paragraph 16 of the stipulation as follows: "The issue of Ordered restitution in a Juvenile proceeding is controlled by the Juvenile Act, 42 Pa.C.S.A.§6362...."

Furthermore, at the time the juvenile signed a Stipulation for Restitution on May 29, 2019, the juvenile maintained that upon completing his undergraduate degree in May of 2022, he believed that he will have a student loan in the amount of $80,000.00 and an additional $10,000.00 student loan for his post graduate degree. (see Stipulation for Restitution hearing, May 29, 2019, paragraph 19 (M) & (N)). This further confirms that when the [c]ourt entered its Order on July 1, 2019, the juvenile was fully aware that he would have outstanding loans upon graduation, yet he still did not appeal the [c]ourt's Order of July 1, 2019. The [c]ourt in its original Order on July 1, 2019 also considered the juvenile's potential college loans in the amount of $80,000.00; the cost of the juvenile's room and board in the amount of $20,000.00 for one year; and the cost of $10,000.00 for the juvenile's post-graduate academic program. (See page 6-7 of the [c]ourt's Order and opinion entered on July 1, 2019).

On June 22, 2021, C.J.S. filed a Motion for Dispositional Review requesting that the court waive the restitution amount owed by the juvenile in an amount of $35,150.00. On June 29, 2021, this court denied C.J.S.'s motion to waive restitution and terminate probation and maintained the original dispositional order requiring that the juvenile shall remain on probation subject to administrative supervision until his 21st birthday. This [c]ourt finds that the dispositional order is not appealable pursuant to the cases of *In the Interest of M.D*. and *In the Matter of R.B*. since no additional requirements were ordered in the dispositional review Order separate and apart from the original dispositional order.

- 8 -

*Id*. at 6-8. Following our review, we agree in part.

C.J.S. entered an admission and had disposition on September 12, 2018, but a restitution Order was not entered until July 1, 2019. Notwithstanding Appellant's allegations, after hearing the testimony of C.J.S., his mother, and G.D.C.'s father, Judge Rogers never determined she did not have the authority to waive or reduce the amount of restitution Judge Pierantoni had ordered. To the contrary, Judge Rogers held that she was "definitely going to maintain that ruling" upon noting that "Judge Pierantoni's opinion was attached as an exhibit, and I've reviewed it. I adopt the reasonings held in Judge Pierantoni's opinion." N.T., 6/22/21, at 41.

"In juvenile proceedings, the final order from which a direct appeal may be taken is the order of disposition, entered after the juvenile is adjudicated delinquent." **Commonwealth v. S.F.**, 912 A.2d 887, 889 (Pa.Super. 2006) (unnecessary capitalization omitted). In juvenile court, post-dispositional motions are optional, but if they are filed, they must be filed within ten days of the dispositional order. Pa.R.J.C.P. 620(A)(1), (B)(1).

If, as is the case herein, a juvenile does not file a timely post-dispositional motion he or she must file a notice of appeal within thirty days of the date of entry of the dispositional order." Pa.R.J.C.P. 620(B)(3). C.J.S. did not file a notice of appeal within thirty days of the final July 1, 2019, Order, rendering his attempt to challenge the terms of that Order nearly two years later untimely.

In addition, in **In re M.D.**, 839 A.2d at 1121 this Court held that "a committed juvenile does not have the right to appeal from a review order that continues his commitment in the same manner and place and that maintains the status quo." As the juvenile court states, the June 23, 2021, Order maintained the status quo and did not impose any additional conditions upon C.J.S. As was repeatedly stated at the June 22, 2021, hearing, the amount owed was determined by the Honorable Fred A. J Pierantoni, III. **Id**. at 28-31. The June 23, 2021, Order acknowledged that the previously ordered restitution in the amount of $35,150.00 remained in effect and that a credit for community service had already been subtracted.

Thus, we find that because C.J.S. did not file a timely appeal following the July 1, 2019, Order, and the June 23, 2021, Order did not modify the requirements previously set forth in that final Order of disposition, his appeal from the June 23, 2021, Order should be quashed.

However, C.J.S.'s appeal from the June 30, 2021, Dispositional Review Order arose after C.J.S. sought a waiver of the outstanding restitution amount and the termination of his probation. Thus, we find this is an appeal from a determination separate from the July 1, 2019, Order, as it required the juvenile court to make a new determination regarding the ending of his probation and the need for C.J.S. to make restitution payments going forward. As such, we next turn to a review of the merits of that appeal.

C.J.S. argues he is entitled to relief from the "Final Restitution Order" because the restitution balance does not serve a rehabilitative purpose, is unreasonable, exceeds his earning capacity and the actual damages sustained by the victim, and violates his constitutional right to due process and equal protection of the law. Brief for C.L.S. at 17-19; 21-49.

C.J.S. also maintains he had been deprived of his statutory and constitutional rights to meaningful review at the dispositional review hearing because the juvenile court concluded it could not modify the restitution award, "continually blocked C.J.S.'s trial counsel from developing arguments about the restitution amount," and declined to consider the arguments counsel did present. *Id*. at 26-32. C.J.S. purports the restitution serves no rehabilitative goal and, instead, only punishes him going forward because it fails to consider his earning capacity as the child he had been when he was under the juvenile court's jurisdiction. *Id*. at 32-38.

C.J.S. further contends he is being treated more harshly than a similarly situated, affluent juvenile due to his inability to pay the full restitution, in violation of his equal protection and due process rights under both the United States and Pennsylvania Constitutions. *Id*. at 39-45. C.J.S. concludes that the restitution he has been ordered to pay violates the excessive fines clause under both the federal and state constitutions. *Id*. at 46-49. In doing so, C.J.S. reasons that:

> Here the $35,150 Final Restitution Order is grossly disproportional to C.J.S.'s ability to pay. The record shows he is

an unemployed full-time college student with five figures of student loan debt, and there is no basis in the record to presume that he was able to pay any more than the approximately $2,390 in good faith payments he has made over the past two years.... At the same time, the order and resulting collections activity will make it more difficult for him to continue obtaining an education and gainful employment, worsening the harm and increasing the disproportionality. The record is clear that this punitive obligation exceeded C.J.S.'s ability to pay, and nothing in the record contradicts C.J.S.'s argument that the Final Restitution Order was unconstitutionality excessive.

*Id*. at 49 (citations to the record omitted). We find C.J.S.'s claims are belied by the record.

It is apparent from a review of the Restitution Hearing testimony, the juvenile court's own statements on the record, and the analysis set forth in its Rule 1925(a) Memorandum that the juvenile court carefully considered all of the **Dublinski** factors in ordering C.J.S. to pay the remaining balance of his restitution.[2] Such considerations include, *inter alia*, the nature of C.J.S's acts and his earning capacity. **See** also 42 Pa.C.S.A. § 6352(a)(5). As the juvenile court explained:

> On June 22, 2021, at the Dispositional Review Hearing, Esperanza Gonzalez, the Luzerne County juvenile probation officer, testified that the juvenile had successfully completed the probation conditions to transfer to administrative probation on January 31, 2019. N.T. 6/22/21, at 3-6. Ms. Gonzalez testified that the juvenile was twenty (20) years old at the time of the hearing and would be turning twenty-one (21) on July 8, 2021. *Id*. at 5.

---

[2] The juvenile court provided an analysis of the merits of C.J.S.'s issues raised on appeal in the event that this Court determined the Dispositional Review Order is appealable. **See** Memorandum Issued Pursuant to Pa.R.A.P. 1925(a) at 9.

Ms. Gonzalez testified that the juvenile currently had paid $3,990.00 towards restitution. He also "paid" an additional $1,000.00 which is currently pending for credit through community service. Once the $1,000.00 payment would be credited, the juvenile's balance due would be $35,150.00

Ms. Gonzalez testified that once the juvenile turns twenty-one (21), the balance owed would be forwarded to the collection department. The collection department would then file the judgment against the juvenile. *Id*. at 7-8. Ms. Gonzalez testified that the juvenile and his mother indicated to her that they do not have the funds to pay off $36,000.00. Ms. Gonzalez indicated that the juvenile would be commencing his senior year at Drexel University in the Fall of 2021. Ms. Gonzalez testified that a civil judgment may hamper the juvenile's ability to continue to collect student loans and financial aid. *Id*. at 12.

Ms. Allison Stemko, the juvenile's mother, testified that the juvenile would not be able to pay the balance owed of 36,150.00 prior to turning twenty-one (21). Mother indicated that the juvenile had approximately $40,000.00 in student loans. The Juvenile's mother indicated that the juvenile had applied for an excellent accelerated Master's program in which he would be able to graduate in June 2023 with a Master's degree in psychology. *Id*. at 13-14. The juvenile's mother testified that she helped her son make some payments toward his college loans between the amount of one hundred to two hundred dollars ($100.00-$200.00) per month. *Id*. at 14. The juvenile's mother further stated that in the event her son did not receive the financial aid from Drexel in light of the judgment against him, he would not be able to finish his college degree. *Id*. at 15-16.

The juvenile's mother testified on cross-examination that her son is intelligent and that a degree in psychology would be a very good profession to have. *Id*. at 18. The juvenile testified he's concerned that he would not be able to pay the amount of $36,150.00. The juvenile confirmed that he applied for a Master's program which he would complete in one year. The juvenile further indicated that his long-term goal is to enter into a doctorate program. He stated that he may not be able to enter into a doctorate program in the event he had to continue paying the amount of money owed through restitution. *Id*. at 20-21.

Mr. Gerard J. Catina testified that he is the father of the victim, G.D.C., who incurred serious injuries after being ejected from the subject vehicle. According to Mr. Catina, his son had to make "out of pocket" payments for hospital bills and medical bills.

*Id*. at 22-23. Mr. Catina testified that both he and his wife had been diagnosed with posttraumatic stress disorder as a result of their son's accident. Mr. Catina also stated that he was required to be on medication in order to address the posttraumatic stress disorder. Mr. Catina testified that he is not agreeing for the juvenile's restitution fees to be waived. Mr. Catina testified that he is not looking to receive the restitution amount of $36,000.00 "up front". He stated that he would be agreeable for the payment plan to operate over a ten-year period. He indicated that he just wanted his son to be reimbursed for what he paid out of pocket. *Id*. 23-24. Mr. Catina testified that his son's friend also died as a result of the juvenile's actions. Mr. Catina indicated that he spent $30,000.00 on attorney's fees and he was not asking for reimbursement for that fee. *Id*. at 24.

Mr. Catina admitted that he had a civil lawsuit against the juvenile and that he settled for $124,750.00 which was paid back to Blue Cross/Blue Shield. Mr. Catina indicated that even though some money was paid from the settlement toward Blue Cross Blue Shield, in addition to the attorney's fees, his family still paid out-of-pocket expenses. *Id*. at 25-26.

This court finds that a civil lawsuit is separate and apart from a restitution fee in a criminal case. Judge Pierantoni already made a ruling on the restitution fee in the original order. This court indicated at the hearing that any civil action amounts in the case are not relevant to Judge Pierantoni's ruling pertaining to the restitution order.

In *Commonwealth v. B.D.G.*, 959 A.2d 362 (Pa.Super. 2008) the Superior Court held that money the victims receive from a civil settlement has no bearing on the [c]ourt's restitution Order. The Superior Court relied on the case of *Commonwealth vs. Kerr*, 298 Pa. Super. vs. [sic] 257, 444 A2d 758 (1982), which held as follows:

> An order of restitution is not an award of damages. While the order aids the victim, its true purpose and the reason for its imposition, is the rehabilitative goal it serves by impressing upon the offender the loss he has caused and his responsibility to repair the loss as far as it is possible to do so. *Id*. 444 A.2d at 760.

Furthermore, in *Kerr*, the Superior court held that the issue of the insurance company's right of subrogation does not have any impact on the validity of the Restitution Order. The court in *Kerr* held that the juvenile's claim that the order of restitution

was unlawful because it was duplicative of monies already paid to the victim's family through a civil settlement did not have any merit. *Id*. at 760-61.

As mentioned above, the Juvenile and the Commonwealth of Pennsylvania entered into a written stipulation on May 29, 2019. In the Stipulation, more specifically, paragraph 16, the parties agreed that in addition to the issue of Court Ordered restitution being controlled by the Juvenile Act, 42 Pa.C.S.A. §6362, the court should apply the analysis of the Superior Court in *Commonwealth v. B.D.G.,* 959 A.2d 362 (Pa. Super.2008) in order to determine the amount of restitution.

In the *Commonwealth of Pennsylvania vs. B. D. G*., 959 A.2d 362, 366 (Pa.Super. 2008), the Superior Court held that the Juvenile Act permits the courts to have a broad discretion in determining an appropriate disposition. Such disposition will not be disturbed absent a manifest abuse of discretion. Title 42 Pa. C.S. §6352 states that the purpose of the Juvenile Act is for the youth to be held accountable for their behavior thereby authorizing the court to enter an order of restitution as part of the plan of rehabilitation. Holding the juvenile accountable for his offenses enables the juvenile to become a responsible and productive member of the community.

In *B.D.G.* a seventeen (17) year old was driving a vehicle when he approached another vehicle traveling ahead of him. The juvenile attempted to pass the vehicle by crossing over the double yellow line in a no passing zone when he collided head on with an oncoming vehicle. The driver from the other vehicle died as a result of her injuries and her mother and family friend incurred serious injuries. The appellant entered into a plea agreement and was adjudicated delinquent after admitting to three counts of recklessly endangering another person. Appellant was also ordered to be placed in service agency for twenty-nine (29) days, completed 100 hours of community service, wrote a note of apology to the victims, [and] had his license suspended for a minimum of 18 months. Restitution to the victims was to be determined at a later date. One of the passengers suffered serious injuries which required hospitalization after the accident and resulted in substantial medical bills. The Department of Public Welfare (DPW) paid for the majority of her bills and placed a lien upon any civil recovery that she may receive. The passenger received $100,000.00 in civil settlement and was required to pay $26,635.00 to DPW, in addition to paying her attorney's fees and additional unpaid medical bills in the amount of $2,804.00. Appellant indicated that he was accepted to the University of

Scranton and needed to receive student loans. Appellant believed that he would not be granted the loans in the event he was ordered to pay restitution by the court. *Id.* at 365. The trial court entered an order directing the Appellant to pay restitution to the injured passenger in the amount of $29439.00 (the amount of reimbursement to DPW plus the amount of post-settlement medical expenses).

In *B.D.G.*, the first issue before the Court was whether the trial court erred in awarding restitution and not taking into account the juvenile's earning capacity, the rehabilitative needs, the nature of the offense, and the victim's current circumstances. The second issue in the case was whether the trial court erred in determining civil liability and/or securing satisfaction of civil damages in awarding an excess of $29,000.00 against the juvenile. 959 A.2d 362 (Pa.Super. 2008). The Superior Court, in relying on *In Interest of Dublinski*, 695 A.2d 827, 829 (Pa.Super. 1997), held that in determining a restitution award, the Juvenile Court must consider four factors:

1.  The amount of loss suffered by the victim;
2.  The fact that defendant's actions caused the injury;
3.  The amount awarded not exceeding defendant's ability to pay; and
4.  The type of payment that would best serve the needs of the victim and the capabilities of the defendant. *B.D.G.*, 969 A.2d 362 (Pa.Super. 2008)

In addressing the amount of loss suffered by the victim, the Superior Court in *B.D.G.* determined the injured passenger's loss and expenses, (Payment of $26,650.00 to the Department of Public Welfare (DPW) plus $2,804.00 in unpaid bills, all of which were paid from her $100,000.00 civil settlement.) 959 A.2d 362, 365. Similarly, in the case at bar, the injured passenger's family had paid $33,682.00 toward a Blue Cross Subrogation Lien and $6,458.00 to the Victim's Compensation Assistance Program (VCAP) from the settlement proceeds.

In addressing the second factor with respect to the defendant's action causing the injury, a "but for" analysis was applied. But for the juvenile's criminal action, the passenger would not have suffered her injuries. Similarly, in the case a bar, "but for" the juvenile's criminal action, the minor child, G.D.C. would not have suffered serious injuries.

In addressing the third factor, the amount awarded was not to exceed the defendant's ability to pay. The Superior Court

examined the juvenile's earning capacity by considering the juvenile's mental ability, maturity, education, past employment; the juvenile's likelihood of future employment to reasonably satisfy the restitution obligation; the impact the restitution award would have on the juvenile's ability to obtain higher education thereby increasing the juvenile's earning capacity; and the juvenile's present ability to make the restitution payment. *Id*. at 367-368.

The appellant in the *B.D.G.* matter argued that his earning capacity was only at minimum wage and that he may never be successfully employed due to his ongoing therapy and counseling. The appellant further argued that he may be ineligible to receive student aid in the event there was a restitution judgment against him and then he would not be able to attend college. The appellant, therefore, argued that the restitution amount awarded by the court exceeded his ability to pay. *Id*. at 368. The Superior Court, however, did not agree with appellant's contentions. The Court noted that due to the appellant's actions, he had caused the death of one individual and caused severe injuries to others. The Superior Court emphasized that the juvenile must be made to understand his responsibility for these terrible events. The Superior Court explained that the restitution award would help the juvenile appreciate his actions under the rehabilitative approach. Despite the juvenile's position that he was not employed at the moment, the court found the juvenile to be physically able to work. Furthermore, the [C]ourt noted that since the accident, the juvenile worked as a lifeguard, in addition to participating in his high school track team. The [C]ourt also noted that even if the restitution award would decrease the juvenile offender's earning capacity by hindering his ability to attend college, the Court may still enter an order of restitution in these situations. According to the [C]ourt, even in the event the juvenile did not have a college degree and pursued a minimum wage job, he would be able to make restitution in a timely fashion. *Id*. at 369. The Superior Court in *Commonwealth v. Wood*, 446 A.2d 948, 949 (Pa.Super. 1982) held that in order for the perpetrator to serve a true rehabilitative purpose of restitution to the victims, the perpetrator may have to make significant sacrifices to accomplish the task.

In the case [at] bar, the juvenile argued that it had been two years since the entry of the civil settlement. The juvenile testified that he had paid $3,890.00 from the balance of the restitution. The juvenile maintained that he was still a college student at Drexel University and had incurred a substantial

student loan debt. The juvenile contended that the restitution award entered by the court in the amount of $35,150.00 had exceeded the juvenile's ability to pay and is contrary to the purpose of the Juvenile Act. This [c]ourt, however, finds that the juvenile, C.J.S., is in a much better position to pay the restitution award than the juvenile in the *B.D.G.* case. In the present case, C.J.S. is already a full-time student at Drexel University who's [sic] grade point average was 3.82 at the end of his second semester. Further, the juvenile is majoring in psychology and is expected to graduate with a Bachelor of Science in psychology in the spring of 2022 followed by a Master's degree and a doctorate degree in psychology. The juvenile also participated in a work-study program at Drexel University in which he earned approximately $2,000.00 in 2019. The Juvenile also secured a job as a waiter earning five ($5.00) dollars per hour plus tips.

The [c]ourt finds that with the juvenile earning at least a Bachelor's degree and quite possibly a Master's degree in psychology would place the juvenile in a position to have a higher earning capacity in which he would be able to repay the restitution award ordered by the court. The [c]ourt is cognizant that the juvenile is still in college; however, the [c]ourt finds that once C.J.S. is gainfully employed following his graduation from college, he will be in a better position to make a higher payment toward the restitution award. The victim's father, Mr. Catina, testified that he was not expecting C.J.S. to pay the restitution award overnight and was willing to accept payment overtime [sic]. The Superior Court, in the *B.D.G*. case noted as follows:

> Appellant makes much of his claim that he has no present ability to pay; such a circumstance is the norm when dealing with a juvenile and cannot serve as a disqualifying factor or else the court's ability to award restitution would cease to exist in the vast majority of the cases.... *Id*. at 369.

The fourth factor to address is the type of payment that will best serve the needs of the victim and the capabilities of the juvenile. The Superior [C]ourt noted in *B.D.G*. that should the court determine that the juvenile had no present ability to pay restitution, then the court may defer the payment until an appropriate time in the future. *Id*. at 366. In the case at bar, the Restitution Order was deferred and the sum of $40,140.00 was ordered to be paid through an installment plan in accordance with 42 Pa. C.S.A. and section 6352(a)(5) and section 9728(a).

- 18 -

According to Section 6352(a)(5), probation would terminate on his 21st birthday and then a judgment would be filed on the remaining balance. The victim's father further testified that he was willing to accept payment from the juvenile over time.

Memorandum Issued Pursuant to Pa.R.A.P., filed 8/27/21, at 9-17.

At the conclusion of testimony at the Restitution Hearing, C.J.S.'s counsel presented extensive argument in support of waiving the outstanding restitution amount. N.T., 6/22/21, at 33-41. Following argument from opposing counsel, the juvenile court addressed C.J.S. personally as it rendered its decision. The court praised C.J.S. for pursuing his education and indicated it admired his resolve, perseverance, and his triumph in realizing success in his life. *Id*. at 46. The court also reminded C.J.S. of the tragedy the Catina family has suffered and explained the family was owed a debt that the court did not find to be unaffordable. *Id*. at 47. The court observed:

> I don't find there to be an unaffordable debt here. I find there would be a debt. I find there to be a debt that, unfortunately, most college students graduate with, and they must make monthly payments toward and they must carve away at. And often those debts are not paid off until one reaches their 40's. But they pay.
> We're not talking about damage to a building or a motor vehicle here. I think somehow while we certainly acknowledge that the damage has an impact upon the livelihood or a family's lifestyle, it is not a human being, and we're addressing an act upon a human being here today.
> I have full confidence in the fact that the goal of the Juvenile Act is going to be achieved through [C.J.S.]. I have full confidence that he is and will continue to be a responsible and productive member of society. I have full confidence in his ability to achieve the goals that he has set out for himself. But in fulfilling the goals of the Juvenile Act and fulfilling the goals of restitution, I must acknowledge that restitution is part of the overall goal of apportionment of responsibility and accountability.

- 19 -

> And I'm going to make a statement that it would be my best estimation that the Catina family would much prefer to have a debt for their child relating to education as opposed to injury. And so I hope I've explained myself fully. I hope everyone understands my motives in rendering this decision and that will be the disposition today.

*Id*. at 47-48.

While C.J.S. posits the juvenile court abused its discretion in failing to waive or reduce his restitution at the final dispositional review hearing, as was the case in *B.D.G.*, Appellant's true argument herein is not that the juvenile court failed to consider the requisite factors but rather that it "failed to accept his self-serving assessment of his situation and weigh the evidence in his favor." *B.D.G.*, 959 A.2d at 368.

C.J.S. urges that his remaining restitution balance should be expunged in light of his good faith efforts to make payments thus far. However, to do so would set a dangerous precedent that a juvenile who makes partial payments toward an ordered restitution amount should be excused from remitting the balance owed when he or she reaches the age of majority. As the juvenile court carefully articulated, the apportionment of responsibility is an integral goal of the Juvenile Act. In requiring C.J.S. to pay his debt in full, the juvenile court did not punish him, but, rather, it furthered the underlying policies of the Juvenile Act to apportion responsibility for damages.

As the above block quotations evince, the juvenile court carefully considered the concerns of C.J.S. and his family, as well as those of G.D.C.'s family. In balancing those considerations, the court concluded that the

restitution award ordered on July 1, 2019, was appropriate; finding no abuse of discretion, this Court will not disturb that disposition. **In re R.D.R.**, 876 A.2d 1009, 1013 (Pa.Super. 1013); **see also Commonwealth v. Williams**, 241 A.3d 1094, 1101 (Pa.Super. 2020) (stating "[a]buse of discretion is not merely an error of judgment [but is established only where] the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.").

With regard to Appellant's argument that the restitution award imposes an excessive fine in violation of the Excessive Fines Clauses of the United States and Pennsylvania Constitutions,[3] we begin our analysis with a consideration of our recent decision in **Commonwealth v. May**, 271 A.3d 475 (Pa.Super. 2022). Therein, we explained:

> Whether a fine is excessive under our Constitution is a question of law, therefore our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Eisenberg**, 626 Pa. 512, 98 A.3d 1268, 1279 (2014). The Eighth Amendment to the U.S. Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST., Amend. VIII. The protections provided by Article I, Section 13 of the Pennsylvania Constitution are coextensive with those provided by the Eighth Amendment.[2] **See Commonwealth v. 5444 Spruce Street, Philadelphia**, 574 Pa. 423, 832 A.2d 396, 399 (2003).

---

[3] The Eighth Amendment of the United States Constitution and Article 1, § 13 of the Pennsylvania Constitution provide: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."

In addressing Appellant's argument, we are guided by *Eisenberg*, which instructs us to consider whether the fine imposed was reasonably proportionate to the crime it criminalizes. In *Eisenberg*, our Supreme Court determined that a mandatory minimum fine of $75,000 for a conviction of a first-degree misdemeanor theft from a casino of $200 was an excessive fine in violation of Article I, Section 13 of the Pennsylvania Constitution. In conducting its proportionality analysis, the Court was persuaded by the fact that: (1) the amount owed was 375 times the amount of the theft; (2) the Crimes Code equivalent of the appellant's offense – a first degree misdemeanor – would have been $10,000; (3) the maximum fine imposable under the Crimes Code was $50,000, which would be for a murder or attempted murder conviction, and (4) the fine would exhaust five years of pre-tax income for a minimum wage worker, "effectively pauperiz[ing] a defendant for a single act." *Id*. at 1286. The *Eisenberg* court also distinguished its holding from cases where the fine is "tailored, scaled, and in the strictest sense calculated to their offenses", as follows:

> In [*Commonwealth v.*] *Church*, [513 Pa. 534, 522 A.2d 30 (1987),] overweight vehicles were fined on a sliding scale **per pound** over the weight limit. In *Eckhart* [*v. Department of Agriculture*, 8 A.3d 401 (Pa.Cmwlth. 2010)], the appellant kennel operator had committed numerous infractions incurring a fine amount in excess of $150,000 based on a $100–$500 **per dog/per day** penalty scheme, $15,000 of which appellant claimed was excessive in light of perceived triviality of the offense. In [*Commonwealth v.*] *CSX* [*Transportation, Inc.*, 653 A.2d 1327 (Pa.Cmwlth. 1995),] the appellant's train car leaked enough corn syrup into the Youghiogheny River to kill approximately 10,000 fish, and thus appellant incurred a roughly $100,000 fine, based on a $10 **per fish** calculation.

> *Id*. at 1287 n.24 (emphasis in original).

*Id*. at 484–85.

Herein, the June 30, 2021, Order was imposed as part of the disposition following an adjudication of delinquency, and C.J.S. argues it will expose him "to an array of punitive adult criminal collections activities when the victim

has already been fully compensated for economic loss." Brief for C.J.S. at 47.

However, as both C.J.S. and the Commonwealth acknowledge, neither the

United States Supreme Court nor the Pennsylvania Supreme Court has

explicitly addressed the application of the Excessive Fines Clause of the Eighth

Amendment to restitution orders. Indeed, this Court has stated:

> Pennsylvania specifically authorizes restitution for any crime where "the victim suffered personal injury directly resulting from the crime ...," 18 Pa.C.S.A. § 1106(a), and provides that "[t]he court shall order full restitution: (i)[r]egardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss," 18 Pa.C.S.A. § 1106(c)(1)(i). Moreover, Pennsylvania law indicates that in determining the amount of restitution the court "[s]hall consider the extent of injury suffered by the victim....," 18 Pa.C.S.A. § 1106(c)(2)(i), and defines "personal injury" as "[a]ctual bodily harm, including pregnancy, directly resulting from the crime," 18 Pa.C.S.A. § 1106(h).

*Commonwealth v. Oree*, 911 A.2d 169, 173–74 (Pa.Super. 2006). In

finding no merit to the appellant's claim that the trial court's imposition of

restitution was unconstitutional because it would take him a lifetime to repay

it, the *Oree* Court reasoned as follows:

> Appellant does not cite, nor are we aware of, any authority for his claim that ordering an amount of restitution which may take him a lifetime to pay is *per se* cruel and unusual punishment. While we do not doubt Appellant's assertion that he may be making restitution payments for the balance of his lifetime since he currently earns only $2,500.00 per month as a machine operator, we will not make the sweeping pronouncement he seeks. We hold that the trial court's imposition of restitution does not constitute *per se* cruel and unusual punishment simply because it may take Appellant a lifetime to pay. As indicated *supra,* we conclude the trial court properly exercised its authority and did not impose restitution which was disproportionate to the injuries caused by Appellant.

*Id*. at 174–75.

In light of the foregoing, even if the Eighth Amendment were explicitly applicable to restitution orders, we would find that the juvenile court herein engaged in the type of analysis required by **Mays**, **supra**. In doing so, the court carefully applied the **Dublinski** factors prior to finding the restitution award to be proper. **See supra**.

Although C.J.S. argues his constitutional rights were violated when he was excessively punished due to his inability to pay the balance of his restitution, the testimony at the Restitution Hearing revealed that he has been able to make some payments reducing the debt while attending college, and he intends to work in a professional capacity after receiving a post-graduate degree. Ms. Stemko's concerns for her son's future and C.J.S.'s own worries are certainly understandable; however, critically, the Catina family is aware that the full balance may not be paid off for eighteen years and is willing to wait to receive the entire payment.

Based on the record, the amount of restitution imposed by the juvenile court fairly holds C.J.S. accountable for his actual conduct. **See B.T.C., supra** (citing 42 Pa.C.S.A. § 6352). Accordingly, we discern no abuse of discretion in the amount of restitution imposed.

Order entered June 30, 2021, affirmed.[4]


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/11/2022</u>

---

[4] An appellate court may affirm the decision of a trial court when it is correct on any basis, regardless of the basis upon which the trial court relied. **See Commonwealth v. Priovolos**, 746 A.2d 621, 626 n.6 (Pa.Super. 2000) (citation omitted).